AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico
Mitchell R. Elfers
Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| ANGELIA GARCIA | ) | Case No. 24MJ1708 BPB |
| YOB: 1990 | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **November 21, 2024** in the county of **San Juan** in the **_____** District of **New Mexico**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses committed within Indian Country |
| 18 U.S.C. § 113(a)(3) | Assault With a Dangerous Weapon |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_Complainant's signature_

Tyler Rackham, Special Agent
_Printed name and title_

Telephonically sworn, electronically signed.

Date: 11/22/2024

_Judge's signature_

City and state: Farmington, NM

B. Paul Briones, United States Magistrate Judge
_Printed name and title_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>VS<br><br>ANGELIA GARCIA<br>Year of birth: 1990 | Case No. 24MJ1708 BPB<br><br>AFFIDAVIT IN SUPPORT OF<br>PROBABLE CAUSE ARREST |

**AFFIDAVIT IN SUPPORT OF COMPLAINT**

I, Tyler Jack Rackham, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed with the FBI since January 2020. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 of the United States Code. Prior to my employment by the FBI, I was a Law Enforcement Officer in the State of Utah for six years. I am presently assigned to the Farmington Resident Agency (RA), Albuquerque Division, where my duties include investigating violations of Federal law, specifically those violations occurring on the Navajo Indian Reservation.

2. I have received training and gained experience in the investigation and enforcement of major crimes including murder, firearms offenses, and other federal crimes. Additionally, I have received training and experience in interview techniques, arrest

procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures. I have previously participated in investigations within Indian Country involving the crimes enumerated below.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. Because this affidavit is submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning the investigation. I have set forth only those facts that I believe are necessary to establish that probable cause to support a criminal complaint as explained below.

4. This affidavit is being submitted in support of a criminal complaint charging Angelia Garcia (**GARCIA**), YOB 1990, with violating 18 U.S.C. §§ 1153 and 113(a)(3), Assault With a Dangerous Weapon.

## RELEVANT STATUTES

5. 18 U.S.C. § 1153(a), in relevant part, states: "Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, . . . a felony assault under section 113 . . . shall

be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

6. 18 U.S.C. § 113(a)(3) criminalizes assault with a dangerous weapon, with intent to do bodily harm, committed within Indian Country.

## PROBABLE CAUSE

7. On November 21, 2024, Navajo Nation Police Department (NNPD) responded to a call for service at Northern Navajo Medical Center (NNMC) in Shiprock New Mexico. Officers responded to the hospital after being informed a patient was transported to the hospital with multiple stab wounds.

8. When Officers arrived, they found A.B., year of birth 1994, hereinafter referred to as JANE DOE, with stab wounds to the face, back of the neck, arm, and two wounds in the abdomen. Investigators conducted a brief interview with JANE DOE. JANE DOE stated **GARCIA** had stabbed her. JANE DOE had difficulty explaining to investigators the location where the incident occurred. JANE DOE was in a lot of pain and struggling to provide the location details.

9. Hospital staff informed investigators that JANE DOE was dropped off at the hospital by two men. The men arrived in a silver Honda Accord.

10. Investigators were able to contact Witness 1, and Witness 2, after they returned to NNMC. Witness 1 and Witness 2 acknowledged they were the ones who had transported JANE DOE to the hospital after JANE DOE had been stabbed. Witness 2 stated that the stabbing occurred at a residence that was searched the day prior by the FBI. This residence is known to investigators and is located at Global Position System

3

(GPS) Coordinates: Latitude 36.780190, Longitude -108.634709, ("Scene Location") which is within the exterior boundaries of the Navajo Nation Indian Reservation. Witness 2 did not see the stabbing but heard from another person that **GARCIA** was the one who stabbed JANE DOE. Witness 2 was outside the house smoking a cigarette when JANE DOE was stabbed. The stabbing occurred inside the residence.

11. Investigators responded to the "Scene Location" and saw Witness 3. Witness 3 was waiting for investigators to respond. Witness 3 was waiting for investigators outside of the residence. Witness 3 lived at the "Scene Location." Witness 3 stated they had been drinking and were a little intoxicated. Witness 3 also noted everyone at the house had been drinking. Witness 3 was outside the residence when the commotion started. Witness 3 heard yelling and screaming. Witness 3 did not see the altercation but was told what happened from others. Witness 3 heard JANE DOE and **GARCIA** were arguing about a male. **GARCIA** was accusing JANE DOE of sleeping with **GARCIA**'s boyfriend. JANE DOE and **GARCIA** had a physical altercation and **GARCIA** pulled out a knife. The altercation occurred near a pool table. JANE DOE threw some of the pool balls at **GARCIA**. **GARCIA** stabbed JANE DOE multiple times.

12. After the altercation and after JANE DOE was transported to the hospital, Witness 3 cleaned up the blood that was inside the house. Witness 3 cleaned up the blood because Witness 3 did not want any diseases. Witness 3 noted there were still some blood stains on the floor and on the pool table. Witness 3 thought someone probably hid the knife that was used in the stabbing. Witness 3 did observe a knife on the counter but

noted it was no longer on the counter. **GARCIA** left the scene with her father right after the incident occurred.

13. The owner of the home at the "Scene Location" was identified as Witness 4. Witness 4 was the one who told Witness 3 what had happened during the altercation. Witness 3 noted Witness 4 was inside the residence when the stabbing occurred. Witness 4 is **GARCIA**'s boyfriend.

14. Investigators contacted Witness 4 at the residence. Witness 4 consented for investigators to search the home for the knife and to photograph blood stains. Investigators observed what appeared to be blood stains on the pool table as well as on the floor. Investigators found multiple knives in the residence but were unable to determine which knife may have been used in the stabbing. None of the observed knives appeared to have blood on them. Investigators did observe a black knife sheath that did not contain a knife. The sheath was approximately 8 inches long.

15. Witness 4 said he was in his room when he heard **GARCIA** and JANE DOE arguing. Witness 4 did not know why JANE DOE and **GARCIA** were arguing. The argument escalated to a fight. The fight occurred in the living room. Witness 4 saw JANE DOE was bleeding. Witness 4 heard **GARCIA** bragging about the injuries JANE DOE suffered. Witness 4 did not believe JANE DOE had a weapon. JANE DOE was wrapping presents in the house prior to the altercation. Witness 4 acknowledged **GARCIA** to be his girlfriend.

16. Witness 4 did not know what happened to the knife. Witness 4 knew the room was cleaned up after the altercation but did not specify who cleaned it.

17. Later, investigators were able to find **GARCIA** at her father's residence. **GARCIA** was detained and placed in the back of a Navajo Nation Police Vehicle. **GARCIA** was advised of her *Miranda* rights and **GARCIA** elected to waive those rights.

18. **GARCIA** stated she was at her boyfriend's house earlier in the day. **GARCIA** cooked dinner, and they all ate. **GARCIA** denied consuming any alcohol. **GARCIA** left the residence after her father picked her up around 8:00 p.m. **GARCIA** initially denied being involved in an altercation at the "Scene Location." **GARCIA** stated that JANE DOE left with some guy in a four door Dodge truck. **GARCIA** stated she did not see JANE DOE after this time.

19. After further questioning **GARCIA** acknowledged she stabbed JANE DOE. **GARCIA** stated JANE DOE head-butted **GARCIA** a few days before the stabbing occurred. **GARCIA** later stated JANE DOE also head-butted **GARCIA** during the altercation. **GARCIA** did not know what happened to the knife after the stabbing. **GARCIA** was angry because JANE DOE and a guy named Ryan[1] were racist to **GARCIA**. The fight occurred at the "Scene Location." **GARCIA** stated the stabbing was in self-defense because JANE DOE was "talking shit." **GARCIA** stabbed JANE DOE in the face. **GARCIA** just grabbed the knife and stabbed her. **GARCIA** reiterated the stabbing was in self-defense of the racism **GARCIA** experienced. **GARCIA** did not describe being in fear of imminent danger.

## JURISDICTION

---

[1] Ryan is an individual who was not present. However, he is the subject of a separate case and investigation in 24-MJ-1654.

20. As referenced above, the incident occurred within the Navajo Reservation. Specifically, investigators determined the location to be near Global Position System (GPS) Coordinates: Latitude 36.780190, Longitude -108.634709, which is within the exterior boundaries of the Navajo Nation Indian Reservation.

21. Records state that **GARCIA** and **JANE DOE** are both enrolled members of the Navajo Nation.

## CONCLUSION

22. Based on the above information, I submit that there is probable cause to believe that Angelia Garcia (**GARCIA**) violated 18 U.S.C. §§ 1153 and 113(a)(3), assault with a dangerous weapon.

23. Therefore, I respectfully request that the Court approve the attached criminal complaint and issue an arrest warrant.

24. This complaint was reviewed and approved by Supervisory United States Attorney Alexander Flores.

Tyler Jack Rackham
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me
this ___22___ day of November 2024

_____
B. PAUL. BRIONES
United States Magistrate Judge